ROBERT L. HENDERSON, PLAINTIFF-EMPLOYEE v. MANPOWER OF GUILFORD COUNTY, INC., AND/OR BENNER & FIELDS, INC., DEFENDANT-EMPLOYERS AND THE HOME INDEMNITY COMPANY AND/OR MICHIGAN MUTUAL IN-SURANCE COMPANY, DEFENDANT-INSURANCE CARRIERS

No. 8310IC941

(Filed 18 September 1984)

**Master and Servant § 53— workers' compensation—dual employment**

Defendant construction company was a special employer of plaintiff and was therefore liable equally with defendant supplier of temporary workers for compensating plaintiff for an injury arising out of and in the course of his employment where the evidence tended to show that cutting trees and clear-ing lands, the work that injured plaintiff, was entirely the work of defendant construction company; in doing that work, plaintiff was under the sole control and supervision of the construction company which not only controlled the details of that work, but also had the right to discharge plaintiff from that work at will; defendant supplier had no control over plaintiff while he was working for the construction company, nor did it have any interest in control-ling him during such time, since its business was hiring employees to others for their use; and the only control defendant supplier had over plaintiff was the power to assign him to an employer interested in renting his services, to establish his rate of pay on each job, and to terminate his connection with it when it saw fit.

APPEAL by defendants Manpower of Guilford County, Inc. and The Home Indemnity Company from Opinion and Award of the North Carolina Industrial Commission entered 15 June 1983. Heard in the Court of Appeals 5 June 1984.

At the time involved in this case: Plaintiff, who was off from his regular job, was looking for temporary work; Benner & Fields, a construction company, was clearing land preliminary to constructing a building on it and needed workers to do the clearing; Manpower of Guilford County, Inc. was in the business of supplying temporary workers to many kinds of employers that needed them. For each temporary worker that Manpower supplies an employer it charges the employer an hourly rate depending upon the skills required for the job involved, establishes a lesser wage for the worker when his application is accepted, and when the job or week is over pays the employee direct, after withholding the taxes required by law. Upon inquiring at Manpower's office on 16 March 1981, plaintiff was told that a job clearing a construction site of trees was available, which he agreed to accept. His rate of pay was set at $4.00 an hour, but the hourly rate that Benner & Fields paid Manpower for this job was $6.25. Plaintiff filled out an employment application with Manpower, was told to report to J. C. Hunt, Benner & Fields' supervisor at the job site involved, and was given a slip of paper with the job site address and Hunt's name on it. Upon arriving at the job site plaintiff was put to work cutting down trees, and before the day was over a tree felled by a fellow employee struck and injured him. Benner & Fields paid Manpower $6.25 an hour for the hours that plaintiff worked that day and Manpower in turn paid plaintiff $4.00 an hour, less the withholding taxes.

When plaintiff's Workers' Compensation claim against both Manpower and Benner & Fields was heard, Deputy Commissioner Bryant concluded that when injured plaintiff was not an employee of Benner & Fields, but was an employee of Manpower, and awarded him disability benefits. Meanwhile, with the Commission's approval, plaintiff and Manpower's carrier entered into a lump sum settlement, which has been paid, and plaintiff is no longer interested in the case. Manpower appealed the determination that plaintiff was not also an employee of Benner & Fields; but the Full Commission affirmed the award in all respects, and Manpower again appealed.

*No brief filed for plaintiff appellee.*

*Tuggle, Duggins, Meschan & Elrod, by J. Reed Johnston, Jr., for defendant appellants Manpower of Guilford County, Inc. and The Home Insurance Company.*

*Shope, McNeil and Maddox, by E. Thomas Maddox, Jr., for defendant appellees Benner & Fields, Inc. and Michigan Mutual Insurance Company.*

PHILLIPS, Judge.

The only question presented is whether plaintiff was employed solely by Manpower, as determined by the Industrial Commission, or was employed jointly by Manpower and Benner & Fields, as the appellants contend. We hold that plaintiff was employed both by Manpower and Benner & Fields and that both are therefore liable for the Workers' Compensation payments received by plaintiff. *Leggette v. McCotter*, 265 N.C. 617, 144 S.E. 2d 849 (1965).

The Commission's conclusion that plaintiff was not an employee of Benner & Fields was primarily based on the following finding of fact:

> 6. Although defendant-Manpower furnished no tools or materials, only Manpower could fire or hire the employees which they send to their customers. Because defendant-Manpower exercised ultimate control over the employees they sent to defendant-Benner & Fields, defendant-Manpower is singly liable for the injuries suffered by plaintiff in the course of his employment with Manpower.

Not only is this finding of fact not supported by competent evidence, but the evidence before the Commission indisputably established otherwise.

William Chambers, Manpower's Industrial Manager, testified that:

> Manpower furnished no materials or tools at all for Mr. Henderson in connection with his work with Benner & Fields. Mr. Hunt had control over the manner and methods in which a particular job is done for a customer. When we get an order we are also told who the supervisor is that the men

will be working for and the supervisor they are to report to. Once they get on the job they are under his supervisor [sic] one hundred percent. We furnish no supervision on jobs. This is customary and usual for Manpower. On this particular job on March 16, 1981 we were furnishing no supervision whatsoever to Mr. Henderson with respect to this particular job, nor did we furnish any tools or any materials.

. . . .

Benner & Fields was not obligated to continue to use the services of Mr. Henderson for any period of time. Mr. Henderson was subject to discharge from working for Benner & Fields at the discretion of Benner & Fields. When a person such as Mr. Henderson came and applied for temporary help with Manpower, Manpower did not guarantee that he would be furnished with a job. Mr. Henderson was not paid any wages until he was assigned a job for a customer of Manpower.

\*    \*    \*

When we send an employee out to work for a customer that employee works for the customer only as long as the customer needs him. It is the customer's needs that we are furnishing. In Mr. Henderson's case if after working for Benner & Fields for a short time they told they didn't think he could handle the job and they didn't believe they could use him for the rest of the day and he left Benner & Fields, he would still be employed by Manpower. As to whether only Manpower has the power to fire and hire the people that we send out to customers, that is true.

\*    \*    \*

It was Benner & Fields' supervisor's responsibility to assign particular duties to Mr. Henderson for this job. The supervisor had supervision over the manner and method in which Mr. Henderson carried out his duties. Manpower did not benefit in any way from the activity or services that Mr. Henderson was carrying out on the job site at Benner & Fields other than the $6.25 an hour that was paid.

Irvin Angel, Benner & Fields' President, testified:

As to whether Benner & Fields would direct the method and manner in which Mr. Henderson performed the duties that he was doing, we would direct the work to be done. The manner in which he does would be his own skills. If the manner in which it was done was not satisfactory we couldn't keep him on the job. The manner and method in which Mr. Henderson, Mr. Carter and any other person that was sent over by Manpower did his work was under the supervision of Mr. Hunt. As to whether in Mr. Henderson's case if we were not satisfied with the manner in which he was doing the work or his ability to take directions, we would not keep him if he was unsatisfactory, because Manpower's responsibility was to furnish those people skilled. Benner & Fields was not obligated to keep any person on the job site sent over by Manpower if he was not satisfactory. By him being not satisfactory, that is a decision Benner & Fields would make.

\*    \*    \*

If we were dissatisfied with one of Manpower's employees, we would call Manpower and tell them that he was not performing his duties satisfactorily and he would likely be replaced. As to whether Manpower or us would replace him, Manpower.

No evidence to the contrary was offered. In our judgment, the evidence presented establishes as a matter of law that plaintiff was the employee of both Manpower and Benner & Fields within the contemplation of the Workers' Compensation Act. It shows that: Cutting trees and clearing land, the work that injured plaintiff, was entirely the work of Benner & Fields. In doing that work, plaintiff was under the sole control and supervision of Benner & Fields, who not only controlled the details of that work, but had the right to discharge plaintiff from *that* work at will. Manpower had no control whatever over plaintiff while he was working for Benner & Fields, nor did it have any interest in controlling him during such time, since its business is hiring employees to others for their use, and it had hired plaintiff to Benner & Fields for them to use as they saw fit. The control that Manpower had over plaintiff was the power to assign him to an employer interested in renting his services, to establish his rate of pay on each job, and terminate his connection with Manpower when it saw fit.

That Benner & Fields had no power to terminate plaintiff's employment or arrangement with Manpower, which the Commission deemed decisive, is irrelevant to the case, in our opinion. The control that is relevant to the case was control over the tree cutting work and those that did it. If the Commission's conception to the contrary was legally correct, the loaned or borrowed servant rule would be unknown to the law, since a borrower, from the nature of things, has only the power to terminate the loan and after terminating it has no control whatever over that which had been borrowed and returned. Yet, the courts have long recognized that a general employee of one can also be the special employee of another while doing the latter's work and under his control. 99 C.J.S. *Workmen's Compensation* § 47 (1958). And it goes without saying that if a loaned servant is the borrower's servant also when doing the borrower's work and under his control, a servant especially hired out for that very purpose is likewise. *Leggette v. McCotter*, 265 N.C. 617, 144 S.E. 2d 849 (1965). In that case, a front-end loader operator, who was in the general employment of a building supplies concern that occasionally rented heavy equipment and the operator to its customers, was held to also be the special employee of the building contractor, who rented both the machine and operator, directed the details of the work, and had the power to terminate the special work being done, but had no power to terminate the general overall employment of the operator.

G.S. 97-2(2) defines an employee as "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . ." Nevertheless, it is fundamental that under some circumstances a person can be an employee of two different employers at the same time, in which event either employer or both may be liable for Workers' Compensation. *Leggette v. McCotter, supra.* The concept of joint employment in Workers' Compensation cases is explained in 1C, Larson, Workmen's Compensation Law, § 48.40 (1982) as follows:

> Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the

same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

In § 48.00 of the same volume, the test for determining the liability of special employers in loaned employee cases is stated as follows:

When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has a right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

The test stated was adopted by this Court in *Collins v. James Paul Edwards, Inc.*, 21 N.C. App. 455, 204 S.E. 2d 873, *cert. denied*, 285 N.C. 589, 206 S.E. 2d 862 (1974), and its three conditions are fully met by the facts of this case: (a) Although no express contract existed between plaintiff and Benner & Fields, an implied contract manifestly did, since they accepted plaintiff's work and were obligated to pay Manpower for it, and Manpower was obligated in turn to pay plaintiff; (b) plaintiff was doing Benner & Fields' work when injured; and (c) Benner & Fields had the right to and did control the details of that work.

Benner & Fields' contention that *Collins v. James Paul Edwards, Inc., supra*, requires a holding that it was not a special employer of plaintiff is mistaken. In that case the general employer was a grading contractor, the alleged special employer was a paving contractor, neither was engaged in the business of furnishing employees to the other or anyone else, the employee never left the control of the general employer, and it did not appear to the court's satisfaction that the employee had consented to the control of the paving contractor. The circumstances of this case, already stated, are materially different. Furthermore, since

the dominant purpose of the Workers' Compensation Act is to protect and compensate employees injured on their jobs, employers in charge of jobs where work is actually done and injuries occur should not be absolved of liability because of bookkeeping practices of those who merely arrange for workers to report to others.

In conclusion, we hold that Benner & Fields was a special employer of plaintiff and is therefore liable equally with Manpower for compensating the plaintiff.

The award of the Industrial Commission is vacated and the matter remanded for the entry of an award in favor of the appellants in accord with this opinion.

Vacated and remanded.

Judges WEBB and JOHNSON concur.