*********** EVIDENTIARY MATTERS
1. At the hearing before the Deputy Commissioner, defendant ADM Cocoa, Inc., submitted defendant-employer PGA/Creative Corporate Staffing's Responses to its Request for Production of Documents, which was admitted into the record and marked as Defendant ADM's Exhibit (1). Also at the hearing before the Deputy Commissioner, defendant ADM Cocoa, Inc. submitted an unsigned workers' compensation Waiver Form, which was admitted into the record and marked as Defendant ADM's Exhibit (2).
2. Subsequent to the hearing before the Deputy Commissioner, the parties submitted a revised Industrial Commission Form 28B, which was admitted into the record and marked as Stipulated Exhibit (2).
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. Neither PGA/Creative Corporate Staffing nor its carrier Hartford Specialty Risk Services have shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. ADM Cocoa has shown good ground to amend the prior Opinion and Award. The Full Commission therefore modifies and affirms the Opinion and Award of the Deputy Commissioner as follows.
 ***********
The Full Commission finds as fact and concludes as law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1):
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The Industrial Commission has jurisdiction over the parties and the subject matter.
3. All parties have been properly named, and there is no question as to misjoinder or nonjoinder of parties.
4. Plaintiff sustained a compensable injury by accident on January 29, 1999.
5. Plaintiff's average weekly wage on January 29, 1999 was $280.00, yielding a compensation rate of $186.68, subject to verification.
6. Plaintiff's claim against PGA/Creative Corporate Staffing and Hartford Specialty Risk Services was resolved by way of a Compromise Settlement Agreement, which was approved by the Industrial Commission on April 17, 2001.
 ***********
Based upon the evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old. In late 1998, plaintiff discussed the possibility of working for ADM Cocoa, Inc. (hereinafter ADM), with Mr. William Pearson, a friend and ADM employee. Plaintiff was interested in becoming a permanent employee of ADM, which operates a chocolate factory.
2. Plaintiff and Pearson then met with Tim Petersen, ADM's plant manager. ADM had experienced difficulty filling the position eventually occupied by plaintiff. Nonetheless, plaintiff was informed that he would have to be assigned to ADM through a temporary employment service before he could be hired as permanent employee. At that time, PGA/Creative Corporate Staffing (hereinafter PGA), was one of the temporary employment agencies used most often by ADM.
3. Plaintiff was then sent to meet with Ron Monteith, PGA's employee responsible for contact with ADM, and the appropriate paperwork was completed. Prior to this meeting, Monteith had discussed plaintiff's situation with Peterson. Based upon all of the credible evidence of record, there was no discussion between Monteith and Peterson regarding worker's compensation insurance at that time.
4. As part of PGA's normal business practice, Monteith initiated a background check on plaintiff. However, at ADM's request, plaintiff began work at the ADM plant while the results of the background check were still pending.
5. After plaintiff began working at ADM, Monteith discovered that plaintiff had been convicted of a felony three and one-half years before being hired. It was PGA's policy not to employ persons with a felony conviction within the previous five years. This information is only relevant to the case at hand in that it gave rise to a conversation between Monteith and Peterson about plaintiff and his continued employment.
6. Regarding this conversation between Monteith and Peterson, the Full Commission accepts as credible Peterson's testimony regarding his expressed desire to give plaintiff a chance in the position ADM needed to be filled, despite the prior conviction. The Full Commission does not accept as credible Monteith's testimony that he and Peterson discussed plaintiff's employment relating to workers' compensation or indemnification matters at that time.
7. Prior to being assigned to a company by PGA, temporary employees did not earn wages. Once assigned, temporary workers were responsible for turning in their timesheets to the company at which they were working. That business would then transmit the information from the timesheets to PGA, which would then pay the workers and forward a bill to the company involved.
8. Under certain circumstances, PGA could remove a temporary employee from an assignment. However, PGA provided no direct supervision to temporary workers once they were assigned. No temporary workers worked in the PGA facilities.
9. While assigned to ADM, plaintiff was directly supervised by ADM employees and could be removed or fired at any time by ADM. ADM provided plaintiff all necessary tools and materials for the performance of his work, as well as controlling the details of his work and his hours.
10. Because ADM accepted the benefit of plaintiff's work and was obligated to compensate PGA for it, an implied contract for hire existed between plaintiff and ADM.
11. On January 29, 1999, plaintiff sustained a compensable injury by accident when his left arm was amputated above the elbow while working on a chocolate mixer at ADM. At the time of his injury by accident, the work plaintiff was performing was essentially that of ADM.
12. Following plaintiff's injury, Monteith and Petersen spoke again and there was some testimony that indemnification was discussed. That the possibility of indemnification was discussed during this conversation is supported by Defendant ADM's Exhibit (2), the unsigned form that was sent by Monteith to Peterson. While indemnification was discussed, no agreement was entered into by PGA and ADM regarding workers' compensation or indemnification at that time.
13. Based upon the credible evidence of record, there was no written contract or agreement between PGA and ADM regarding their liability for plaintiff's January 29, 1999 injury by accident. However, the course of dealing between the parties in the past was that PGA included the cost of workers' compensation coverage in its billings to ADM. The reasonable inference from this is that PGA thereby accepted full responsibility for injury to joint employees of PGA and ADM; otherwise there would have been a written agreement to the contrary and the workers' compensation premiums would have been shared by the two entities.
14. PGA and its carrier accepted the compensability of plaintiff's claim, without prejudice to later pursue contribution or indemnification from ADM, and entered into a Settlement Agreement, which was approved by the Commission on April 17, 2001. Pursuant to this agreement, PGA and its carrier paid medical and indemnity compensation to plaintiff in the amount of $246,350.63.
15. At the time of his January 29, 1999 injury by accident, plaintiff was a joint employee of the general employer PGA and the special employer ADM, both of which would have been equally liable for the consequences thereof but for the course of dealing between them.
16. The fact that PGA continued the employment of plaintiff with a different employer at a different location in violation of its felony policy belies PGA's position that it would not violate its felony policy without workers' compensation indemnification.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was an employee of defendant-employer ADM given that: (a) an implied contract for hire existed between plaintiff and ADM; (b) at the time of his injury by accident, the work plaintiff was performing was essentially that of ADM, and; (c) ADM directly supervised plaintiff and controlled the details of his work. Henderson v. Manpower ofGuilford County, 70 N.C. App. 408, 319 S.E.2d 690 (1984).
2. At the time of his January 29, 1999 injury by accident, plaintiff was a joint employee of the general employer PGA and the special employer ADM. Id. In the absence of an agreement between defendant-employer PGA and defendant-employer ADM regarding their liability for plaintiff's January 29, 1999 injury by accident, both would be equally liable for the consequences thereof. Id.; N.C. Gen. Stat. § 97-51. The course of dealing between the parties made PGA solely liable for workers' compensation coverage of joint employees of PGA and ADM. Evidence as to the course of dealing between employer and employee is of value to show the interpretation that they put upon the character of the employment and their intention regarding it. Smith v. City of Gastonia, 216 N.C. 517,5 S.E.2d 540 (1939). ADM met its obligations under N.C. Gen. Stat. § 97-9 by paying for workers compensation coverage of its joint employees with PGA through paying bills rendered by PGA that included the cost of workers' compensation coverage.
3. Corporate Staffing and Hartford Specialty Risk Services are NOT entitled to be indemnified by defendant ADM Cocoa, Inc. for one half of the compensation paid to plaintiff through the agreement approved on April 17, 2001.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants PGA/Creative Corporate Staffing, Employer, and Hartford Specialty Risk Services, Carrier, are solely liable for the workers compensation benefits for plaintiff for the injury by accident of January 29, 1999. ADM has no workers compensation liability for plaintiff's on-the-job injury of January 29, 1999.
2. The costs of this proceeding shall be paid by PGA and its workers compensation carrier.
This 13th day of April 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________ RENEE RIGGSBEE COMMISSIONER