***********
At the initial hearing in this matter before Deputy Commissioner Wanda Blanche Taylor, held on 17 November 1998, Mr. Maurice Jones, owner of Zachary Trucking Co., was called as a witness for defendant, Proud Mary Trucking, Inc. When Mr. Jones testified that at the time of injury plaintiff was driving a truck under an I.C.C. number owned by Zachary Trucking Co., Deputy Commissioner Taylor ended his testimony. By Order of Deputy Commissioner Taylor entered 8 January 1999, Zachary Trucking, Inc. was added to this action as a necessary party. By Order of the Full Commission dated 22 January 2001, the Full Commission added former owner of Zachary Trucking, Inc., Mr. Maurice Jones, individually as a necessary party to the action, reopened the record in this case and remanded the case to Deputy Commissioner Taylor for the taking of Mr. Jones' testimony. Mr. Jones appeared at the hearing held on 28 March 2001 and provided his testimony for the record.
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 24 January 1997, the alleged date of the injury by accident giving rise to this claim, Proud Mary Trucking and plaintiff were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff alleges an injury to his right middle finger.
3. Plaintiff and defendant, Proud Mary Trucking, stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, plaintiff's medical records from the following providers:
• Lacy E. Thornburg, M. D., and
• Memorial Mission Hospital.
 *********** EVIDENTIARY MATTERS
Plaintiff's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31 and 32 were admitted into evidence.
 ***********
Based upon all the competent evidence adduced at the hearings before the Deputy Commissioner, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was a 25 year old male, born 15 October 1973. Plaintiff has a tenth-grade education. After high school plaintiff worked in a kitchen, drove trucks for Youngblood, obtained his commercial drivers license when he was 21 years old, drove a log truck, spent time cutting trees and performed other driving jobs.
2. On 12 November 1996, plaintiff was hired as a driver by defendant, Proud Mary Trucking, pursuant to an ad found in the AshevilleCitizen Times Newspaper. On the date he was hired, plaintiff was immediately requested to get into a semi-truck and drive to Raleigh for two weeks to do storm clean up following a hurricane. Plaintiff drove this truck from town to town loading tree stumps. After two weeks performing this function, plaintiff was put to work driving a semi-truck over the East Coast in different states from Florida to Indiana hauling heavy equipment and large tanks.
3. Defendant Proud Mary Trucking's office was located on a farm in McLeansville, N.C. If there was a lapse of a day or so while plaintiff was waiting for a load, he was required to feed cows and do work around the farm, work in the shop running wires, help others strap down their loads and whatever he was told to do by Proud Mary supervisors.
4. At Proud Mary Trucking's facility there were four different names on the trucks as follows: Stage Coach Express, Proud Mary Trucking, Zachary Trucking and Landstar Liegen. Pursuant to the agreement between Zachary Trucking and Proud Mary Trucking, effective from 1996 to 1997, Zachary Trucking would provide Proud Mary Trucking with two trucks. In return, the owner of Zachary Trucking would receive a percentage of each load carried on the trucks.
5. Plaintiff did not own any of the trucks which he drove or any of the equipment which he used. Proud Mary Trucking's dispatcher, Mike Flemming, and its owner, Buddy Stinson, told plaintiff what to do. They determined when and where plaintiff would pick up and deliver loads. Plaintiff was at no time contacted by or given instructions by anyone affiliated with Zachary Trucking. Plaintiff was placed as the driver of the Zachary Trucking truck by Buddy Stinson. Plaintiff was issued cash advances pursuant to a TIC financial systems card which indicated that plaintiff "as defined in Sec. 390.5 is regularly driving a vehicle operated by the below named carrier and is fully qualified under Part 391, Federal Motor Carrier Safety Regulations." The certification was issued by Proud Mary Trucking. Plaintiff was issued cash advances on several occasions pursuant to this card. Plaintiff was paid by defendant, Proud Mary Trucking.
6. On 24 January 1997, plaintiff was hauling loads of coal cars over a two-week period back and forth from Spurgen, Indiana to the Kentucky State line as directed by Proud Mary Trucking. It was raining hard and muddy on that date and as plaintiff was unloading his rig in Spurgen, he climbed up by putting his left foot on his back tire and using his right arm to pull himself up. After plaintiff had pulled his body up and as he was attempting to place his right foot on the tire, his left foot slipped from the tire. He fell and his right second finger remained caught in the handle pin. Plaintiff felt immediate pain in his right second finger.
7. Plaintiff immediately sought treatment for his injury. After plaintiff's injury, defendant, Proud Mary Trucking, required plaintiff to bring a load back home. Plaintiff was sent to Winchester, Kentucky to pick up a load before he was allowed to return home because Proud Mary Trucking would not allow him to return with an empty truck.
8. At the time of plaintiff's injury on 24 January 1997, he was driving a truck with Zachary Trucking, Inc., Madisonville, Kentucky, ICC M.C. 291061 printed on the door. Zachary Trucking was owned by Maurice Jones, who never had more than two employees at any given time. Proud Mary Trucking had three or more employees in North Carolina at all times relevant to this claim.
9. Immediately after plaintiff's injury, Tri-State Orthopedic Surgeons, Inc. of Evansville, Indiana contacted Proud Mary Trucking and obtained verification that plaintiff's injury was covered under workers' compensation and received authorization for plaintiff to be treated by Dr. Paul Perry in that practice. A billing address of Proud Mary Trucking, P. O. Box 150, Sedalia, North Carolina was given. Defendant, Proud Mary Trucking, has not paid for the medical treatment which it authorized.
10. As a direct result of plaintiff's injury to his right second finger, plaintiff suffered a central tendon insertion injury to the dorsal PIP joint of the finger, and ultimately on 5 June 1997, was required to undergo a right second finger PIP capsulectomy with extensor tenolysis.
11. As a direct and proximate result of his compensable injury, plaintiff was written out of work from 24 January 1997 through 27 March 1997, and from 5 June 1997 through 16 June 1997.
12. On 7 January 1998, plaintiff reached maximum medical improvement and retained a 20% permanent partial impairment of his right second finger based upon loss of motion, residual pain and cold intolerance.
13. As a direct and proximate result of plaintiff's compensable injury he incurred $5,276.29 in medical bills as follows:
• Wirth Regional Hospital $400.84
• Tri-State Orthopedic Surgeons $126.00
• Vinncenes Radiology $19.95
• Carolina Hand Surgery $1,888.00
• Asheville Anesthesia $464.00
• Patient Credit $2,106.25
• Memorial Mission Hospital $271.25
Total $5,276.29
14. When plaintiff called Buddy Stinson, owner of Proud Mary Trucking, to indicate that he would be out of work for a couple of weeks due to his finger injury, Mr. Stinson hung up the phone. Plaintiff did not work for Proud Mary Trucking or Zachary Trucking Company after that time.
15. Plaintiff has not received medical attention for his finger since January 1998.
16. On 24 January 1997, plaintiff earned an average weekly wage of $600.00.
17. Plaintiff filed a Form 18 with the North Carolina Industrial Commission alleging that Proud Mary Trucking, Inc. was responsible as his employer for workers' compensation due because of his injury by accident on 24 January 1997. On 26 January 1998, plaintiff filed a Form 33, Request that Claim be Assigned for Hearing, requesting a hearing on this claim against Proud Mary Trucking. On 17 November 1998, a hearing was held with respect to plaintiff's claim against Proud Mary Trucking, Inc. As a result of testimony given by plaintiff and other witnesses, it was determined that there were other parties who were necessary to the adjudication of plaintiff's claim and by Order dated 8 January 1999, Zachary Trucking Company was added as a party-defendant to this case. Service was obtained on Zachary Trucking Company on 26 January 2001; however, as Zachary Trucking has never employed more than two employees, it is not subject to the Workers' Compensation Act.
18. On 24 January 1997, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer.
19. At the time of his injury, plaintiff was jointly employed by Proud Mary Trucking, Inc. and Zachary Trucking Company.
20. As a direct and proximate result of his 24 January 1997 compensable injury by accident, plaintiff sustained an injury to his right second finger.
21. As a direct and proximate result of plaintiff's 24 January 1997 compensable injury by accident, plaintiff was unable to engage in physical activities required by his former job or any other job from 24 January 1997 through 27 March 1997, and from 5 June 1997 through and including 16 June 1997.
22. As a direct and proximate result of plaintiff's 24 January 1997 compensable injury by accident, plaintiff retains a 20% permanent partial impairment of his right second finger.
23. As a direct and proximate result of plaintiff's 24 January 1997 compensable injury by accident, plaintiff incurred a total of $5,276.29 in medical bills.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On 24 January 24, 1997, plaintiff sustained an injury by accident to his right second finger when he fell off the back of his truck. Plaintiff's injury arose out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. At the time of his compensable injury, plaintiff was jointly employed by both Proud Mary Trucking, Inc., and Zachary Trucking Company. Joint employment "occurs when an employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation."Henderson v. Manpower of Guilford County, Inc., 70 N.C. App. 408,319 S.E.2d 690 (1984).
3. In the case of Watkins v. Murrow, 253 N.C. 652, 118 S.E.2d 5
(1961), the Supreme Court discussed dual employment as it relates to truck drivers who are employed by one company but drive under an I.C.C. license belonging to another. The facts in Watkins, are similar to those in the instant case. The primary factor which distinguishes Watkins from the instant case is that in Watkins the lessee of the truck had the I.C.C. license and in the instant case the owner-lessor has the I.C.C. license. In Watkins, the defendant-lessor, Murrow owned the truck the plaintiff drove, and despite the fact that the contract indicated that the lessee, Byrd, retained control of the truck, Murrow in fact maintained the vehicle. Murrow also maintained control over all aspects of the plaintiff's employment. The lessee Byrd leased trucks from Murrow, but its sole involvement with the actual trucking operation was its provision of the I.C.C. license. Murrow contended that Byrd bore the entire liability for the injuries of the plaintiff-truck driver by virtue of its ownership of the I.C.C. license. The Court disagreed, noting that Byrd's liability or non-liability did not determine Murrow's relationship to the plaintiff, which depended entirely upon the nature of the employment. The Court ultimately determined that Murrow was liable for the plaintiff's injuries by virtue of its control over the vehicle and the plaintiff's work, and Byrd was also liable by virtue of its ownership of the I.C.C. license under which the plaintiff drove. Accordingly, the plaintiff was employed by both, and both employers were jointly liable. Id.
In the instant case, plaintiff is considered an employee of Zachary Trucking solely by virtue of his operating the truck under the Interstate Commerce Commission Certificate of Zachary Trucking Company. See Turnerv. Epes Transport Systems, Inc., 57 N.C. App. 197, 290 S.E.2d 714
(1982). All other aspects of plaintiff's employment were controlled by Proud Mary Trucking, including hiring, payment of wages, control of trips, loads and all aspects of deliveries, making plaintiff an employee of that company. N.C. Gen. Stat. § 97-2.
4. Because joint employer Zachary Trucking Company did not at any time employ more than two regular employees, the Industrial Commission does not have jurisdiction over Zachary Trucking Company. N.C. Gen. Stat. § 97-2(1). Accordingly, joint employer Proud Mary Trucking is solely responsible for payment of plaintiff's benefits under the Act. N.C. Gen. Stat. § 97-2.
5. As a direct and proximate result of his 24 January 1997 compensable injury, plaintiff sustained an injury to his right second finger.
6. As a direct and proximate result of his 24 January 1997 compensable injury, from 24 January 1997 through and including 27 March 1997, and from 5 June 1997 through and including 16 June 1997, plaintiff was incapable of earning wages which he was receiving at the time of his injury at the same or in any other employment. N.C. Gen. Stat. §97-29.
7. As a direct and proximate result of his 24 January 1997 compensable injury, plaintiff retains a 20% impairment of his right second finger. N.C. Gen. Stat. § 97-31(3).
8. Plaintiff earned an average weekly wage of $600.00, yielding a compensation rate of $400.02. N.C. Gen. Stat. § 97-2(5).
9. As a direct and proximate result of his 24 January 1997 compensable injury and the resulting 20% permanent partial disability of the right second finger, plaintiff is entitled to payment of compensation at the rate of $400.02 for a period of eight weeks. N.C. Gen. Stat. § 97-31(3).
10. As a direct and proximate result of his 24 January 1997 compensable injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $400.02 per week for the period from 24 January 1997 through and including 27 March 1997, and from 5 June 1997 through and including 16 June 1997. N.C. Gen. Stat. § 97-29.
11. The treatment plaintiff received for injury to his second finger was reasonably necessary to effect a cure, lessen the period of disability and provide relief, and plaintiff is entitled to have such treatment paid for by defendant in the amount of $5,276.29. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant, Proud Mary Trucking, Inc., shall pay temporary total disability compensation to plaintiff at the rate of $400.02 per week for the period from 24 January 1997 through and including 27 March 1997, and from 5 June 1997 through and including 16 June 1997. Payment shall be made in a lump sum, subject to attorney's fees approved below.
2. Defendant, Proud Mary Trucking, Inc., shall pay permanent partial disability compensation to plaintiff for his 20% permanent partial impairment of the right second finger compensation at the rate of $400.02 for a period of eight weeks. Payment shall be made in a lump sum, subject to attorney's fees approved below.
3. Defendant, Proud Mary Trucking, Inc., shall pay all medical expenses incurred by plaintiff in the amount of $5,276.29 as such expenses were a result of his compensable injury.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendant, Proud Mary Trucking, Inc., shall bear the costs.
This the ___ day of October, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER