***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. National Food Express, Inc. was a wholly owned subsidiary of Thorn Apple Valley, Inc. and was incorporated and organized in the State of Michigan.
2. Thorn Apple was incorporated, organized and had its principal place of business in the State of Michigan. Thorn Apple was registered as a foreign company in the State of North Carolina and operated a bacon processing plant in Holly Ridge, North Carolina.
3. Coast Refrigerated Trucking Company was a wholly owned subsidiary of Thorn Apple and was incorporated and organized in the State of North Carolina.
4. National Food Express, Inc.and Thorn Apple were self-insured in the State of Michigan and at all times relevant to this matter.
5. Thorn Apple's North Carolina bacon processing plant operated as Thorn Apple Valley-Carolina Division. It was self-insured in North Carolina together with Thorn Apple's subsidiary Coast Refrigerated Trucking Company at all times relevant to this action.
6. Thorn Apple as administrator of the Fund provided medical and paid workers' compensation benefits pursuant to Michigan law in relation to Knight's alleged August 14, 1992 injury. Any monies paid to Knight in relation to her alleged August 14, 1992 injury were paid by Thorn Apple in its sole capacity as administrator of the Fund not as her employer.
7. On August 13, 1993, Knight filed an Application for Mediation or Hearing-Form A regarding her alleged August 14, 1992 injury with the Michigan Labor Department. On January 31, 1996, the Michigan Department of Labor dismissed her claim for benefits with prejudice for failure to prosecute her claim.
8. As result of her alleged August 14, 1992 accident, Knight received workers' compensation benefits in Michigan, unemployment compensation in Wisconsin and social security benefits.
9. On March 5, 1999, Thorn Apple and its various subsidiaries including but not limited to National Food Express, Inc. and Coast Refrigerated Trucking Company, filed a Chapter 11 voluntary petition in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. The bankruptcy was subsequently converted to a Chapter 7 petition because Thorn Apple was never able to file a reorganization plan. Thorn Apple, National Food Express, Inc., Coast Refrigerated Trucking Company and other subsidiaries had been liquidated and are no longer in existence.
10. On October 20, 1999, an Order was issued in the Michigan Bankruptcy Proceedings granting the Guaranty Association relief from the automatic stay and authorizing it to take possession of certain North Carolina self-insured claims.
11. On March 7, 2002, the Guaranty Association filed a motion to dismiss for failure to prosecute pursuant to Rule 613(2) of the Workers'Compensation Rules of the North Carolina Industrial Commission and a supporting memorandum of law. The parties stipulated the Motion to Dismiss, Memorandum in Support of the Guaranty Association's Motion to Dismiss and Knight's Response to the Guaranty Association's Motion to Dismiss shall be part of the record in this action.
12. The issues before the undersigned are: (i) whether the action should be dismissed for failure to prosecute pursuant to Rule 613(b) ofthe Workers' Compensation Rules of the North Carolina IndustrialCommission; (ii) whether North Carolina Industrial Commission has jurisdiction over Knight's claim; (iii) whether the North Carolina Industrial Commission should declare that National Food Express, Inc. is Knight's employer based upon her inconsistent assertions; (iv) whether Thorn Apple is a joint employer or a sole employer of Knight and is a proper defendant in this action; (v) whether Thorn Apple had been properly named as a defendant in this action; (vi) whether the Guaranty Association should be dismissed as a party to this action; and (vii) whether the alleged injury is a covered claim pursuant to N.C.G.S. §97-131 et seq.?
 *********** EVIDENTIARY RULINGS
The undersigned has made evidentiary rulings in regards to exhibits and objections at various points in the trial of this case.
Plaintiff has raised objections as to exhibits tendered by the Guaranty Association.
Plaintiff's objection to the Guaranty Association 29 is Moot in of the Guaranty Association has withdrawn its Exhibit 29.
Plaintiff's objection to the Guaranty Association's Exhibit 31 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 32 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 33 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 34 is SUSTAINED.
Plaintiff's objection to the Guaranty Association's Exhibit 42 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 45 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 48 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 52 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 53 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 54 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 55 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 56 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 57 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 58 is SUSTAINED.
Plaintiff's objection to the Guaranty Association's Exhibit 59 is OVERRULED.
Plaintiff's objection to the Guaranty Association's Exhibit 61 is OVERRULED.
The objections raised in the depositions of Betty Ray-Kine, George V. Allen, Edward E. Boan, Edward W. Cowan, Louis Glazier, David Menke, Franklin Roberts, Kenneth L. Shaw, Terry A Torkko, and Phil Strickland, are OVERRULED.
The Guaranty Association's objection to plaintiff's submission of Exhibit 16 in letterform is SUSTAINED.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Carolina Meat Processors, Inc., a North Carolina meat processing plant, filed an August 30, 1979 application for a license to self-insure in North Carolina effective January 1, 1980.
2. In 1983, Frederick Herrud, Inc., a Michigan corporation, acquired Carolina Meat Processors, Inc. as a wholly owned subsidiary and later merged it into division of Frederick Herrud, Inc., known as the Carolina Division.
3. On August 30, 1983, Frederick Herrud, Inc., predecessor to Thorn Apple Valley, Inc., filed an application to self-insure its Carolina Division and Coast Refrigerated Trucking Company in North Carolina with the North Carolina Department of Insurance to replace the self-insurance license of Carolina Meat Processors, Inc. The North Carolina Department of Insurance approved the Frederick Herrud, Inc. application effective September 1, 1983.
4. Frederick Herrud, Inc. became Thorn Apple Valley, Inc. and the North Carolina license to self-insure workers' compensation continued under the name Thorn Apple.
5. Thorn Apple had three (3) wholly owned trucking subsidiaries. They are Coast Refrigerated Trucking Company, a North Carolina subsidiary, National Food Express, Inc., a Michigan subsidiary, and Tri-Miller Transport, Inc., a Utah subsidiary. Thorn Apple also owned its own trucking division known as Thorn Apple Valley Transportation.
6. National Food Enterprise, Inc. was incorporated on October 25, 1983 with its principal place of business and operations in the State of Michigan.
7. National Food Express, Inc. provided trucking services to many businesses including direct competitors of Thorn Apple. National Food Express, Inc. made deliveries including but not necessarily limited to Meyer, Gordon's Foods, Topps, Baddalament, Excel Packing Company, Dole, Chiquita, and Ada Beef.
8. Plaintiff was hired as an over-the-road truck driver for National Food Express, Inc. on July 5, 1992 pursuant to a Michigan employment application and pursuant to the union agreement between National Food Express, Inc. and the Michigan General Teamsters Union, Local No. 406.
9. Plaintiff never filed a separate employment application with Thorn Apple and she never entered into an employment contract with Thorn Apple.
10. Plaintiff learned of National Food Express, Inc. through her previous employment as a legal secretary for Honigman, Miller, Schwartz and Cohn, L.L.P., general counsel for Thorn Apple and its various subsidiaries including National Food Express, Inc.
11. Plaintiff was a Wisconsin resident who applied for work in Michigan.
12. Plaintiff recognized that National Food Express, Inc. was her employer and National Food Express, Inc. never denied its employment relationship with plaintiff. National Food Express, Inc. paid plaintiff's wages and workers' compensation benefits.
13. As condition of her pre-employment screening, plaintiff completed a Department of Transportation physical and drug exam in Michigan. Plaintiff was required to take a written examination administered by the State of Michigan. Plaintiff was required to take a road test under the supervision of a National Food Express, Inc. trainer. The test originated and concluded in the State of Michigan.
14. From July 5, 1992 until August 1, 1992, plaintiff participated in over-the-road drivers training conducted under the supervision of a trainer from National Food Express, Inc. On or about August 3, 1992, plaintiff began driving without supervision.
15. Plaintiff was required to keep National Food Express, Inc. logs indicating the times she spent off duty, on duty, driving and sleeping. Plaintiff provided copies of these daily logs and trip reports to National Food Express, Inc. after she returned to her Michigan home base.
16. The majority of plaintiff's routes, approximately more than ninety (90%) percent, were in the northeastern United States including Michigan, Pennsylvania, New York, Connecticut and Delaware.
17. Plaintiff's work was controlled by National Food Express, Inc. employees pursuant to her employment contract.
18. National Food Express, Inc. dispatchers were solely responsible to direct and control the activities of plaintiff including coordinating her hauls.
19. Plaintiff was assigned to deliver Thorn Apple products on the front haul from Michigan to a destination primarily in the northeastern United States by dispatcher of National Food Express, Inc. After completing the front haul, plaintiff would contact National Food Express, Inc. dispatcher to report her delivery and obtain instructions regarding her next haul. National Food Express, Inc. dispatchers would either contact a Thorn Apple facility to determine if any loads were available and/or the dispatcher might contract with another company for the back haul.
20. After a back haul had been identified, National Food Express, Inc. dispatcher would advise plaintiff. National Food Express, Inc. attempted to schedule plaintiff's return to Michigan home base with a paid freight so as to produce income and revenues for National Food Express, Inc. Plaintiff was often assigned to carry several back hauls by National Food Express, Inc. dispatcher before she returned to Michigan.
21. Plaintiff stored her truck in Michigan after she would complete the deliveries for National Food Express, Inc. and when she was not working.
22. National Food Express, Inc. maintained its own drivers' forms and drivers logs.
23. National Food Express, Inc. employees wore National Food Express, Inc. uniforms, which did not reflect any relationship with Thorn Apple.
24. National Food Express, Inc. owned tractors and trailers in its corporate name. National Food Express, Inc. often leased new equipment from a company not affiliated or owned by Thorn Apple because of leases were less expensive than outright ownership. The lease agreement normally contained a buy-out provision that allowed National Food Express, Inc. to purchase a tractor or trailer at a predetermined price. If National Food Express, Inc. offered to purchase the equipment at the expiration of the lease, it would become an asset of National Food Express, Inc. rather than Thorn Apple.
25. On August 12, 1992, plaintiff left Branford, Connecticut en route to Jackson Heights, New York and Bordentown, New Jersey. In Bordertown, plaintiff went off duty for approximately fourteen (14) hours. Thereafter, plaintiff departed Bordentown, New Jersey en route to Ashland, Virginia, where she remained off duty for another twelve (12) hours before departing for Holly Ridge, North Carolina.
26. Plaintiff arrived in Holly Ridge, North Carolina on August 14, 1992 at the Carolina Division and Coastal facilities.
27. Plaintiff had never previously driven in North Carolina for National Food Express, Inc. and never returned to North Carolina during the remainder of her employment.
28. On August 14, 1992, plaintiff allegedly sustained a work related injury. National Food Express, Inc. paid benefits to plaintiff based upon this claim pursuant to Michigan law.
29. In October 1992, plaintiff returned to work as a truck driver for National Food Express, Inc. and her workers' compensation benefits were discontinued.
30. After returning to work, plaintiff had a series of motor vehicle accidents and disciplinary problems including her refusal to take or follow orders from the National Food Express, Inc. dispatcher.
31. On February 16, 1993, plaintiff was terminated by National Food Express, Inc. for four (4) minor preventable accidents that required she be immediately discharged according to Rule (1)(b) of the applicable union contract.
32. Following her termination from National Food Express, Inc., plaintiff returned to work for other employers that were not affiliated with National Food Express, Inc.
33. At the time of Thorn Apple bankruptcy, all its Michigan workers' compensation claims and all of the Michigan workers' compensation claims of National Food Express, Inc., including plaintiff's claim, were transferred to the Michigan Self-Insurer Security Fund, a division of the funds Administration of the Michigan Consumer and Industry Services.
34. Each subsidiary and trucking division operated pursuant to a separate union contract. Coast Refrigerated Trucking Company drivers were members of the North Carolina United Food and Commercial Workers International Union, Local 204. National Food Express, Inc. drivers were members of the General Teamsters Union, Local 406 in Michigan. Drivers for Thorn Apple Valley Transportation were also members of the General Teamsters Union, Local 406 in Michigan.
35. National Food Express, Inc. drivers operated pursuant to a separate Michigan contract than Thorn Apple Valley Transportation drivers. The two (2) agreements had very different terms and conditions including but not limited to: assignments of Thorn Apple deliveries; wage structures; vacation packages; retirement plans; and, grievance procedures.
36. National Food Express, Inc. was the only company that provided health insurance through Blue Cross Blue Shield. The other subsidiaries and divisions used a Thorn Apple health care plan.
37. National Food Express, Inc. was not an employer pursuant to N.C.G.S. § 97-2(1) because it did not have three (3) or more North Carolina employees.
38. National Food Express, Inc. never afforded license to self-insure its workers' compensation claims in the State of North Carolina. National Food Express, Inc. was only self-insured in the State of Michigan.
39. National Food Express, Inc. was never a member of the Guaranty Association.
40. Because National Food Express, Inc. was never a member of the Guaranty Association, plaintiff cannot assert a covered claim pursuant to N.C.G.S. § 97-31(a).
41. Thorn Apple was not a joint employer of plaintiff. Plaintiff was solely employed by National Food Express, Inc.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdiction to administer the North Carolina Workers' Compensation Act pursuant to Chapter 97 of the North Carolina general statutes. See Bryant v. Dougherty, 267 N.C. 554,148 S.E.2d 548 (1966). In order for the Industrial Commission to assume jurisdiction, claimant must show: (1) the existence of an employment relationship at the time of the alleged injury and (2) that the employer regularly employed three (3) or more employees in the State of North Carolina. N.C.G.S. § 97-2(1); See Lucas v. Li'l General Stores,289 N.C. 212, 218, 221 S.E.2d 257, 261-62 (1976).
2. An employment relationship existed between National Food Express, Inc. and plaintiff on August 14, 1992. N.C.G.S. § 97-2.
3. No employment relationship existed between Thorn Apple and plaintiff on August 14, 1992. N.C.G.S. § 97-2.
4. Plaintiff is estopped from denying employment relationship with National Food Express, Inc. pursuant to the doctrine of collateral estoppel which prevents re-litigation of issues that have already been determined and that affect the same parties or parties in privity. SeeThomas M. McInnis Associates, Inc. v. Hall, 318 N.C. 421,349 S.E.2d 552 91986). In this case, plaintiff and National Food Express, Inc. had acknowledged the employment relationship. See Knightv. National Food Express, Inc., et al.
5. The parties are bound by their previous conduct and the legal doctrine relating to the rights and obligations of the parties. Plaintiff's belated attempt to claim Thorn Apple as a parent for National Food Express, Inc. was her joint employer is belied by the evidence and applicable law.
6. Plaintiff has failed to sustain her burden to show that National Food Express, Inc. regularly employed three (3) or more employees in North Carolina. Plaintiff's claim that several National Food Express, Inc. drivers lived in North Carolina is not competent evidence. N.C.G.S. § 97-2(1).
7. N.C.G.S. § 97-2(2) defines an employee as "every person engaged in employment under any appointment or contract of higher or apprenticeship, express or implied, oral or written . . ." an employment relationship may include "special employment" or "Joint employment" in which an employee of one (1) entity can be treated as an employee of another as well. Brown v. Friday Services, Inc., 119 N.C. App. 753, 759,460 S.E.2d 356, 360 (1995), review denied by Brown v. Friday Services,Inc., 342 N.C. 191, 463 S.E.2d 234 (1995), citing Henderson v. Manpowerof Guilford County, Inc., 70 N.C. App. 408, 413, 319 S.E.2d 690, 693
(1984). In order to establish joint or special employment, the employee bears the burden to clearly demonstrate that certain tests creating an employment relationship with both employers are met. Collins v. Edwards,21 N.C. App. 455, 460, 204 S.E.2d 873, 877 (1974), cert denied,285 N.C. 589, 206 S.E.2d 862 (1974). These tests include: that the employee has entered a contract to hire with two (2) employers, that the employee is performing related services for both employers; and, that both employers have the right to control the details of the employee's work. See Pinckney v. United States of America, 671 F. Supp. 405, 408
(E.D.N.C. 1987).
8. Plaintiff's claim that National Food Express, Inc. was her general employer and Thorn Apple was her special employer is not supported by the evidence. See Brown v. Friday Services, Inc., 119 N.C. App. 753, 759,460 S.E.2d 356, 360 (1995), review denied by Brown v. Friday Services,Inc., 342 N.C. 191, 463 S.E.2d 234 (1995). Plaintiff has failed to show that she entered into a contract with Thorn Apple, plaintiff has failed to demonstrate that her work and services were for any other entity other than National Food Express, Inc., plaintiff has failed to show her work was controlled by both Thorn Apple and National Food Express, Inc. National Food Express, Inc. was plaintiff's sole employer. Thorn Apple was never an employer of the plaintiff. Brown v. Friday Services, Inc.,119 N.C. App. 753, 460 S.E.2d 356 (1995).
9. Any North Carolina self-insured must be approved by the North Carolina Department of Insurance and must satisfy certain financial criteria and submit a statutory deposit, based upon the applicant's claims experience and financial condition. N.C.G.S. § 97-93; N.C.Admin. Code tit. 11, r. .0608(b). Each self-insured employer must in writing, promptly report to the Commission of insurance changes in names and addresses of the businesses it self-insures or intends to self-insure as well as changes in its business structure, including its divisions, subsidiaries, and internal organization. N.C. Admin. Code tit. 11, r..0609(c); N.C.G.S. § 97-80(e).
10. Thorn Apple never informed the North Carolina Department of Insurance that it intended to self-insure National Food Express, Inc. in the State of North Carolina. N.C.G.S. § 97-180.
11. National Food Express, Inc. was not incorporated until October 25, 1983 which was after the August 8, 1983 Frederick Herrud, Inc. application for self-insurance in North Carolina. Therefore, National Food Express, Inc. could not have been a subsidiary at the time of the August 1983 application as a matter of law.
12. National Food Express, Inc. never filed a separate application for self-insurance with the North Carolina Department of Insurance. N.C.G.S. § 97-180.
13. North Carolina law requires all licensed self-insurers to pay a premium tax, which is calculated based on a North Carolina payroll reported by the North Carolina licensed self-insurer. N.C.G.S. §§ 97-93; 97-105-228.5.
14. National Food Express, Inc. never reported payroll to the North Carolina Department of Insurance for purposes of North Carolina premium tax because it was never self-insured in North Carolina. N.C.G.S. §§97-93; 97-105-228.5.
15. National Food Express, Inc. was solely self-insured in Michigan and Michigan is the appropriate form for plaintiff's workers' compensation claim. N.C.G.S. § 97-2.
16. If the North Carolina Department of Insurance affords a license to self-insure, the self-insurer becomes a member of the Guaranty Association. N.C.G.S. § 97-131(b).
17. The Guaranty Association operates and administers the North Carolina Self-Insurance Guaranty Fund, which is funded and maintained through assessments of members of the Guaranty Association. N.C.G.S. § 97-133(3). Assessments are provided by statute and include assessments upon membership in the Guaranty Association, annual assessments and post-insolvency assessments. N.C.G.S. § 97-133(a)(2), (a)(6), (c), and (d). These assessments are calculated using premium information provided to the Guaranty Association by the North Carolina Department of Revenue. The Guaranty Association has no independent authority to determine the payroll assessment.
18. If an employer is not subject to the assessment power of the Guaranty Association, employees cannot assert a covered claim against the Guaranty Association. N.C.G.S. § 97-133.
19. National Food Express, Inc. was never a member of the Guaranty Association and was never subject to assessments. N.C.G.S. § 97-33.
20. National Food Express, Inc. was never an employer in the State of North Carolina as provided by N.C.G.S. § 97-2.
21. Thus, the North Carolina Industrial Commission has no jurisdiction over National Food Express, Inc.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Since plaintiff has failed to establish that National Food Express, Inc. regularly employed three (3) or more employees pursuant to N.C.G.S. § 97-2(1), her claim must be denied for lack of subject matter jurisdiction.
2. Further, since plaintiff does not have a "covered claim" pursuant to the Guaranty Act, therefore, her claim must be dismissed.
3. Each side shall bear its own costs.
This the 20th day of November 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/mb