LONNIE G. COLLINS, EMPLOYEE PLAINTIFF v. JAMES PAUL ED-
    WARDS, INC. EMPLOYER; OHIO CASUALTY INSURANCE COM-
    PANY, CARRIER; WOOTEN ASPHALT COMPANY, EMPLOYER;
    AETNA CASUALTY & SURETY COMPANY, CARRIER; DEFENDANTS

No. 7311IC511

(Filed 15 May 1974)

1. Master and Servant § 53— workmen's compensation — dual employ-
    ment — liability of special employer
        In order for a special employer to become liable under the Work-
    men's Compensation Act for injuries to a lent employee, the employee
    must have expressly or impliedly made a contract of hire with the
    special employer.

2. Master and Servant § 53— workmen's compensation — dual employ-
    ment — insufficiency of evidence
        In an action by a truck driver for a contract hauler of asphalt
    to recover workmen's compensation benefits for injuries received while
    hauling asphalt for a paving contractor, the evidence was insufficient
    to support a determination by the Industrial Commission that an addi-
    tional special employment relationship was entered into between
    plaintiff driver and the paving contractor such as to make the paving
    contractor jointly liable with plaintiff's general employer for the
    compensation payments where it tended to show that the paving con-
    tractor paid an agreed rate per ton mile for use of the truck and
    driver and plaintiff's general employer paid for the expenses of operat-
    ing the truck, including wages of the driver, that the paving contractor
    told plaintiff driver where to take the asphalt and what route to take,
    and that employees of the paving contractor supervised weighing of the
    truck and asphalt.

APPEAL by defendants Wooten Asphalt Company and its
compensation insurance carrier from opinion and award of
the North Carolina Industrial Commission dated 12 February
1973.

Claimant, Lonnie G. Collins (Collins) was injured in an
accident on 4 November 1970 while driving a truck belonging to
his employer, James Paul Edwards, Inc. (Edwards). On 8
March 1971 Collins, Edwards, and Edwards's compensation in-
surance carrier signed Industrial Commission Form 21, "Agree-
ment for Compensation for Disability," by which they stipulated
that they were bound by the North Carolina Workmen's Com-
pensation Act and that Collins sustained an injury by accident
arising out of and in the course of his employment. By this
agreement Edwards and its insurance carrier agreed to pay
compensation to Collins. This agreement was approved by the

Industrial Commission on 15 March 1972. On 29 October 1971, the same parties signed Form 26, "Supplemental Memorandum of Agreement as to Payment of Compensation," by which they stipulated the extent of Collins's disability and the rate and period for which he was entitled to compensation. This supplemental agreement was approved by the Industrial Commission on 8 February 1972.

In the meantime, on 12 October 1971, a hearing was held before a Deputy Commissioner of the N. C. Industrial Commission on the question whether, at the time of the accident on 4 November 1970, Collins was an employee of Edwards or was an employee jointly of Edwards and Wooten Asphalt Company. Attorneys for Edwards and its insurance carrier and for Wooten Asphalt Company and its insurance carrier participated in this hearing, and the parties stipulated that both Edwards and Wooten were subject to and bound by the provisions of the Workmen's Compensation Act. Evidence was presented on behalf of both Edwards and Wooten. There was no substantial conflict in the evidence, which in substance showed the following:

Edwards is engaged in business as a grading contractor. Collins was employed by Edwards as a truck driver and was paid on an hourly basis. Edwards owns five trucks, and when these are not needed in the grading business, Edwards uses them in contract hauling of sand and asphalt for other people. Wooten Asphalt Company is engaged in business as a paving contractor and operates a batch plant in which asphalt is mixed according to State specifications. To haul the asphalt from the batch plant to the location where paving is being done, Wooten uses its own trucks and also uses trucks of other truck owners under an arrangement by which Wooten pays an agreed rate per ton mile for use of the truck and driver, the truck owner paying for gasoline and other expenses of operating the truck, including the wages of the driver.

On 4 November 1970, about fifteen trucks were hauling asphalt from the batch plant to the paving site. Three or four of these belonged to Edwards, others belonged to a Mr. Denning, one or two may have been Wooten trucks, and the remainder were individually owned. On the morning of 4 November 1970, the president of Edwards told Collins to report to Wooten Asphalt Company, where they would tell him what to do. Collins drove an Edwards truck to Wooten Asphalt Company's plant, where it was first weighed empty. Collins then drove the truck

to the asphalt chute, which was manned by Wooten employees, where it was loaded with asphalt. He drove the truck back onto the scales, where it was again weighed, and a Wooten employee told him where to take the load, drawing a map and showing him what route to take to get there. On the first load out, Collins was injured when the Edwards truck he was driving collided with a train at the Wooten crossing.

Other evidence will be referred to in the opinion.

Following the hearing before the Deputy Commissioner, and on 7 December 1971, the Deputy Commissioner filed his opinion and award, in which he made findings of fact, including the following:

"5. Edwards instructed plaintiff Collins to report to Wooten Asphalt Company to haul asphalt and get instructions from Wooten Company regarding details of hauling. Edwards never gave instructions, supervised or controlled plaintiff Collins in his work with Wooten. It was Wooten's responsibility to control.

"6. Wooten Company supervised hauling by plaintiff, which included loading, weighing and disposing of materials, number of loads to haul, where to deliver, details and map of route to travel, when to start and stop hauling, and any other instructions concerning hauling of Wooten's materials. Plaintiff ate lunch when and if other Wooten crew members ate. The Wooten office manager kept all records of truck hauling operations such as trips, weighing, mileage, and time worked hauling asphalt for Wooten. However, he was paid his wages by Edwards and Edwards received payment from Wooten for the truck driver, plaintiff Collins, and the use of the truck at ninety-six cents per ton-mile.

"7. During the time that plaintiff Collins worked at Wooten Asphalt Company he was subject to the direction and control of Wooten supervision. Plaintiff Collins was subject to be relieved of his work for Wooten Company by said company but not discharged from employment as a truck driver for Edwards. Plaintiff Collins was also working under the indirect direction and control of Edwards and could be discharged by Edwards at any time. Plaintiff was working for the benefit of both Edwards and Wooten

---

---

and he was a joint employee of such employers at an average weekly wage of $100.00."

On these findings of fact, the Deputy Commissioner concluded as a matter of law that at the time of Collins's injury a joint employment relationship existed between plaintiff Collins and the defendants James Paul Edwards, Inc., and Wooten Asphalt Company, and entered an award that both employers and their compensation insurance carriers jointly pay compensation to Collins. On appeal, the Full Commission adopted as its own the opinion and award of the Deputy Commissioner. From the opinion and award of the Full Commission, Wooten Asphalt Company and its compensation insurance carrier appealed.

*Young, Moore & Henderson by B. T. Henderson, II and R. Michael Strickland for defendant appellants, Wooten Asphalt Company and Aetna Casualty & Surety Company.*

*Smith, Anderson, Blount & Mitchell by John L. Jernigan for defendant appellees, James Paul Edwards, Inc. and Ohio Casualty Insurance Company.*

PARKER, Judge.

By executing Industrial Commission Forms 21 and 26, Edwards and its compensation insurance carrier admitted their liability to pay compensation to the injured employee. The question presented by this appeal is whether the Industrial Commission was correct as a matter of law in ruling that Wooten Asphalt Company and its compensation insurance carrier must share in that liability. More precisely, the question is whether the facts disclosed by the record support the Commission's conclusion of law that a joint employment relationship existed such as to make both Edwards and Wooten and their respective carriers liable to pay compensation to the injured employee. We hold that they do not.

Certainly situations may exist under which an employee may properly be considered to be in the joint employment of two employers so that both become jointly responsible to pay compensation if the employee is injured by accident arising out of and in the course of such employment. *Leggette v. McCotter,* 265 N.C. 617, 144 S.E. 2d 849, and certain of the cases noted in Annotation, "Workmen's compensation: liability of general or special employer for compensation to injured employee," 152

A.L.R. 816, illustrate such situations. One authority analyzes the "lent employee" problem as follows:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

> "(a) the employee has made a contract of hire, express or implied, with the special employer;

> "(b) the work being done is essentially that of the special employer; and

> "(c) the special employer has the right to control the details of the work.

> "When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." 1A, Larson, Workmen's Compensation Law, § 48.00.

By statutory definition, the term "employee" for purposes of the Workmen's Compensation Act means "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . . " G.S. 97-2(2). Because of this statutory requirement that the employment be under an "appointment or contract of hire," Larson states that the first question which must be answered in determining whether a lent employee has entered into an employment relationship with a special employer for Workmen's Compensation Act purposes is: Did he make a contract of hire with the special employer? If this question cannot be answered "yes," the investigation is closed, and "[t]his must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation." 1A, Larson, Workmen's Compensation Law, § 48.10. Further discussing the matter in the same section, the author states:

> "In one sense, the lent-employee doctrine is not a separate doctrine at all. Theoretically, the process of determining whether the special employer is liable for compensation consists simply of applying the basic tests of employment set out earlier in this chapter. If they are satisfied, the presence of a general employer somewhere in the background cannot change the conclusion that the special employer has qualified as an employer of this employee for compensation purposes.

---

Collins v. Edwards

---

"What gives the lent-employee cases their special character, however, is the fact that they begin, not with an unknown relation, but with an existing employment relation. The conflict of interest becomes one not between employer and employee (who is assured of recovering from someone) but between two employers and their insurance carriers. There is here no place for presumptions based on the beneficent purposes of the act. The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee, proof that the work being done was essentially that of the special employer, and proof that the special employer assumed the right to control the details of the work; failing this, the general employer should remain liable." Pages 8-208, 8-210, and 8-211.

Here, the general employer, Edwards, has stipulated that it is liable to pay compensation to its employee, Collins, and no question is raised as to Collins's right to receive compensation payments from Edwards and its compensation insurance carrier. In our opinion, however, the facts do not support the Commission's conclusion of law that an additional special employment relationship was entered into between Collins and Wooten Asphalt Company such as to make Wooten jointly liable with Edwards for compensation payments to Collins.

[1, 2] As noted above, entering into any such special employment relationship would result in Collins losing certain rights while gaining others, and such a relationship could not arise without his express or implied consent. As pointed out by Larson in the treatise above cited:

"The necessity for the employee's consent to the new employment relation stems, of course, from the statutory requirement of 'contract of hire,' discussed in the preceding section. The consent may be implied from the employee's acceptance of the special employer's control and direction. But what seems on the surface to be such acceptance may actually be only a continued obedience of the general em-

Collins v. Edwards

ployer's commands." 1A, Larson, Workmen's Compensation Law, § 48.10, pages 8-214, 8-215.

Here, there was no evidence nor is there any contention that Collins and Wooten ever expressly consented to enter into any employment relationship with each other, and certainly there was no express "appointment or contract of hire" entered into between them. In our opinion the facts in this case do not show such acceptance by Collins of control and direction by Wooten employees over his activities as a truck driver for Edwards as to warrant the conclusion that he impliedly consented to enter into a new and special employment relationship with Wooten. It is true that a casual reading of the findings of fact, especially numbers 5, 6 and 7, made by the Deputy Commissioner, might leave the impression that Collins was subject to extensive and detailed supervision and control by Wooten employees. When these findings are examined more closely, however, and particularly when they are viewed in the light of the testimony upon which they are based, it is apparent that in actuality the supervision and control exercised by Wooten employees over Collins was minimal. Driving the truck during the loading and weighing operations was a simple procedure with which Collins was already familiar, and no supervision and control over his operation of the truck during those operations was required or given. The record keeping functions were performed entirely by Wooten employees and these involved no element of supervision over Collins. The records were of no concern to Collins, but were kept for purposes of settling the accounts between his employer, Edwards, and Wooten, and in connection with the latter's paving contract with the State. The fact that a Wooten employee told Collins where to deliver the first load of asphalt and drew him a route map to show him how to get there, hardly amounts to such supervision and control over his activities as to justify implying therefrom that Collins, by asking for and receiving such directions, was thereby consenting to enter into some type of special employment relationship with Wooten. As the matter turned out, the accident occurred on the first trip which Collins made, but had this not happened, he would not again have needed to ask for directions as to where to deliver the asphalt or the route to follow in doing so.

The facts here distinguish this case from *Leggette v. McCotter, supra.* In Leggette, the general employer assigned its employee to work at the job site of the special employer continuously

for a period of six months prior to the accident. The employee operated a front-end loader, a versatile machine capable of doing a number of diverse jobs. The machine and its operator were furnished by the general employer to the special employer at a rate of $10.00 per hour to perform whatever tasks the special employer's supervisor requested, and the employee performed these different tasks with the machine as the supervisor from time to time directed. As quoted in the Supreme Court opinion, the special employer's supervisor testified:

"We used the machine as a multi-purpose machine, not for just digging dirt. It does anything you need if you pay ten bucks an hour. Mostly, Mr. Leggette moved earth. If I told him to move something else he did if he could. He loaded trucks, pulled them out of the ditch, even poured concrete with the bucket. I told him to pour concrete. * * * I directed him what I wanted him to do." *Leggette v. McCotter*, 265 N.C. @ p. 619.

Our Supreme Court held that the facts in Leggette were sufficient to support the Commission's conclusions of law upon which it based its decision splitting the workmen's compensation award between the general and special employer defendants and their carriers.

In the present case, the employee was not assigned to work at the Wooten Asphalt Company for any extended period of time or to perform a number of different operations as Wooten's superintendent might direct. On the contrary, he was sent there by his general employer to perform one specific task, hauling asphalt, which his general employer had contracted with Wooten to perform. He was injured on the morning of the first day he was engaged in carrying out his general employer's contract with Wooten. Had he not been injured, nothing in the evidence suggests that any of the parties involved contemplated that he would be assigned to hauling Wooten's asphalt except on a temporary basis and for a short period of time. His general employer retained the right to withdraw him and the truck which he drove from the Wooten job at any time the other business of the general employer might require. As above noted, such directions as were given him by Wooten's employees were minimal, and in following them he was only carrying out the instructions of his general employer, on whose payroll he remained and who alone retained the right to determine the terms and conditions of his employment. There was no express "appoint-

ment or contract of hire" between Wooten and Collins, and the facts are not sufficient to give rise to any implied appointment or contract of hire between them.

We think the present case is controlled not by *Leggette v. McCotter, supra,* but by *Perley v. Paving Co.,* 228 N.C. 479, 46 S.E. 2d 298. In that case the owner-driver of a truck contracted with defendant Paving Company, for an agreed price per load, to haul sand and gravel from its source to defendant's mixer. He was killed when his truck was struck by a train at a crossing, and claims for compensation under the Workmen's Compensation Act were filed against the Paving Company. The evidence presented at the hearing disclosed that the arrangements between the Paving Company and the truck owners, including the deceased, and the degree of direction and control which the Paving Company exercised over the hauling activities, were essentially the same as those which existed in the present case between Wooten and the several parties who were hauling asphalt under contract with it. The Industrial Commission in that case, as here, found an employment relationship to exist and awarded compensation against the Paving Company. On appeal to the Superior Court, the findings of fact and conclusions of the Industrial Commission were affirmed. On further appeal, our Supreme Court reversed, reaching the conclusion after careful analysis of the testimony that "the evidence characterizes the relationship of the decedent to the defendant, at the time of the injury, as that of an independent contractor, and not an employee within the purview of the Workmen's Compensation Act." Had Collins in the present case owned his own truck, as several of the other contract haulers who were hauling asphalt for Wooten did, he would have been in precisely the same legal position as was occupied by the deceased truck driver in *Perley v. Paving Co.* The fact that Collins was not himself the independent contractor but was an employee of the independent contractor in this case furnishes no basis for distinguishing the situation here presented from the situation in *Perley v. Paving Co., supra.*

Since we find that the conclusion of the Industrial Commission that an employment relationship existed between Collins and Wooten was not supported by the facts in this case, we do not pass upon appellants' remaining contentions that in any event the Industrial Commission lacked jurisdiction in this proceeding to enter an award against them. In this connection we

do observe, however, that the record does not reveal any claim filed by Collins against appellants, and appellants did not sign and cannot be bound by stipulations signed by others that Collins sustained an injury by accident arising out of and in the course of his employment.

The award of the Industrial Commission is reversed and this matter is remanded to the Commission for entry of an award not inconsistent with this opinion.

Reversed and remanded.

Judges BRITT and MORRIS concur.