***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds that the appealing party has not shown good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives. The Full Commission affirms the Opinion and *Page 2 
Award of the Deputy Commissioner with minor modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties before the hearing in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between, either, Scott Woodin and Myrick Construction, or between Scott Woodin and Ronald Scoggins; or Scott Woodin was a lent employee of Myrick Construction and Ronald Scoggins.
3. The employee's average weekly wage is to be determined.
4. The employee sustained an injury on June 1, 2006.
5. The accident arose out of and in the course of employment and is compensable.
6. The injury resulting from the compensable accident was the proximate cause of Scott Woodin's death.
7. At and subsequent to the hearing, the parties submitted the following documents as Stipulated Exhibits:
 a. Stipulated Exhibit No. 1 — Medical records;
 b. Stipulated Exhibit No. 2 — Death Certificate;
 c. Stipulated Exhibit No. 3 — Industrial Commission filings;
 d. Stipulated Exhibit No. 4 — OSHA file for Scoggins Construction Company;
 e. Stipulated Exhibit No. 5 — Form 1099 for Ronald Scoggins;
 f. Stipulated Exhibit No. 6 — Medical bills; *Page 3 
 g. Stipulated Exhibit No. 7 — Funeral expenses;
 h. Stipulated Exhibit No. 8 — Certificate of Insurance;
 i. Stipulated Exhibit No. 9 — Employment application;
 j. Stipulated Exhibit No. 10 — Discovery;
 k. Stipulated Exhibit No. 11 — OSHA file for Myrick Construction Company;
 l. Stipulated Exhibit No. 12 — Wage information;
 m. Stipulated Exhibit No. 13 — Judgment of Divorce;
 n. Stipulated Exhibit No. 14 — Recorded Statement of Jonathan Fritz;
 o. Stipulated Exhibit No. 15 — Recorded Statement of Richard Penny;
 p. Stipulated Exhibit No. 16 — Recorded Statement of Randy Fritz;
 q. Stipulated Exhibit No. 17 — Recorded Statement of Robert Hobbs;
 r. Stipulated Exhibit No. 18 — Recorded Statement of Billy Myrick;
 s. Stipulated Exhibit No. 19 — Recorded Statement of Ronald Scoggins Vol. 1;
 t. Stipulated Exhibit No. 20 — Recorded Statement of Ronald Scoggins Vol. 2;
 u. Stipulated Exhibit No. 21 — Recorded Statement of John Sisk; and
 v. Stipulated Exhibit No. 22 — Recorded Statement of Pete Starling.
8. The issues to be determined are as follows:
 a. Whether at the time of the accident, Scott Woodin was an employee of Scoggins Construction Company, Myrick Construction Company, or both?
 b. Whether Scoggins Construction Company, Myrick Construction Company, or both should pay all outstanding medical bills and death benefits, per *Page 4 
N.C. Gen. Stat. § 97-38, owed as a result of the admittedly compensable injury resulting in Scott Woodin's death?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On June 1, 2006 Scott Woodin fell approximately 15 to 20 feet and sustained a severe traumatic brain injury. He was in the hospital for approximately one week and died on June 7, 2006.
2. Prior to June 1, 2006, Scott Woodin (hereinafter "deceased employee") had been employed with Scoggins Construction Company (hereinafter "Scoggins") as a laborer and also performed work for Myrick Construction Company (hereinafter "Myrick") on multiple occasions.
3. On June 1, 2006, deceased employee was at a job site where Myrick was the general contractor responsible for framing and constructing the roof for a single-family dwelling. Myrick as the general contractor had subcontracted the siding work to Scoggins.
4. Robert Hobbs, deceased employee's co-worker at Scoggins, was employed as a laborer. He earned $15.00 per hour and worked 20 to 30 hours per week. Mr. Hobbs rode to and from work with deceased employee. Mr. Hobbs rode to work with deceased employee on June 1, 2006. Subsequent to their arrival around 7:00 a.m., deceased employee performed approximately one hour of work for Scoggins.
5. Ronald Scoggins, the owner of Scoggins, advised his employees he was going to have to let someone go, as he did not need four people working on the job. Mr. Scoggins told his son David Scoggins, Robert Hobbs and deceased employee that he was going to have to let *Page 5 
deceased employee go, as there was not enough work. Mr. Hobbs testified he was under the impression deceased employee was terminated from employment.
6. Ronald Scoggins contacted Randy Fritz, the on-site supervisor for Myrick, about possible employment for deceased employee with Myrick. Mr. Hobbs witnessed Mr. Fritz hire deceased employee to work with Myrick on June 1, 2006. Mr. Hobbs also witnessed deceased employee's oral agreement to work for Myrick.
7. Deceased employee immediately began working for Myrick and worked from 8 a.m. until his fall around 4:00 p.m. Deceased employee performed roofing work for Myrick and Mr. Fritz was his onsite supervisor.
8. Mr. Fritz instructed deceased employee where to work and what to do and controlled the manner and method of deceased employee's work.
9. Upon completion of his day of work for Scoggins, Mr. Hobbs approached Mr. Fritz to see if deceased employee could leave work for the day and secured that permission. Deceased employee could not leave his employment with Myrick without the permission of Mr. Fritz, his supervisor.
10. Mr. Scoggins testified that deceased employee was performing roofing work for Myrick on June 1, 2006 and that Myrick controlled the details, manner and method of deceased employee's work.
11. Myrick provided the materials and the majority of the tools required for deceased employee to perform the roofing work for Myrick on June 1, 2006.
12. Although deceased employee had been employed with Scoggins, he had been let go by Ronald Scoggins due to lack of work on June 1, 2006, the same day he began his employment with Myrick. *Page 6 
13. David Scoggins, who was the son of Ronald Scoggins and deceased employee's co-worker, confirmed that deceased employee was let go on June 1, 2006 due to the lack of work; that Myrick agreed to provide deceased employee with employment on June 1, 2006; and that deceased employee was working for Myrick on that date. He further testified that Mr. Fritz, the job supervisor for Myrick, controlled the manner and method of deceased employee's work and told deceased employee where to work and what to do.
14. Randy Fritz provided a recorded statement on June 2, 2006, wherein he confirmed that he agreed to have deceased employee work for Myrick and instructed deceased employee to "go up and help felt the roof."
15. Billy Myrick, owner of Myrick, has had a longstanding professional relationship with Scoggins over the past 25 years. Scoggins has been a subcontractor with Myrick since 1979. Mr. Myrick testified that due to his professional relationship with Scoggins, they would often use each other's employees depending upon the amount of work available. If Scoggins did not have much work available, Myrick might use some of Scoggins workers to perform work for Myrick. Additionally, if Myrick did not have a lot of work available that day, Scoggins might use Myrick's workers to perform work for Scoggins. Mr. Myrick would pay Scoggins for the work performed when a Scoggins' worker, performed work for Myrick.
16. Mr. Myrick agreed that deceased employee was working for Myrick at the time of his accident on June 1, 2006. Mr. Myrick also agreed that deceased employee worked under the direction and control of Mr. Fritz and was performing roofing work for Myrick on June 1, 2006. Mr. Myrick denies, however, that deceased employee was an employee of Myrick.
17. Mr. Myrick testified that Mr. Fritz contacted him by cell phone on June 1, 2006, inquiring whether or not they had enough work for deceased employee, and that he (Mr. Myrick) *Page 7 
advised Mr. Fritz it was okay to let deceased employee work with Myrick on June 1, 2006. The Full Commission finds as fact that subsequent to this telephone conversation, Mr. Fritz offered deceased employee employment with Myrick performing roofing work. Deceased employee accepted the offer of employment and began working for Myrick on June 1, 2006. It is unclear from the evidence whether this employment would have continued after June 1, 2006.
18. Given the disputed issue in this matter, the parties did not have the normal and customary evidence concerning deceased employee's wages. The first two methods of calculating deceased employee's average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5) are unavailable in this matter as deceased employee was only employed for approximately fourteen weeks prior to his compensable injury by accident and only for one day for Myrick at the time of his accident. As deceased employee had only been working for Myrick for one day at the time of his injury, method three is also unavailable for the calculation of deceased employee's average weekly wage. As there is no evidence of the wages of a similarly situated employee, method four is unavailable to calculate deceased employee's average weekly wage. As use of the above four methods is either unavailable and/or would be unfair to either the employee or employer, the fifth method should be used to compute deceased employee's average weekly wage to most nearly approximate the amount of compensation he would be earning were it not for his compensable injury.
19. As deceased employee had worked for Myrick before and apparently was paid for that work at the same rate he was paid for his work at Scoggins, the Full Commission finds as fact that plaintiff was earning the same rate in his employment with Myrick as he earned in his employment with Scoggins. Deceased employee was employed with Scoggins for approximately three and one-half months prior to June 1, 2006 and Ronald Scoggins provided a handwritten *Page 8 
statement and a Form 1099 outlining the wages earned by deceased employee during his period of employment with Scoggins. Deceased employee was paid $6,011.00 during his period of employment with Scoggins. Deceased employee was paid either weekly or every two weeks, and Mr. Scoggins verified that the earnings shown in the amount of $840.00, $996.00, $804.00 and $828.00 would represent payments for two-week periods of time and all other payments represented wages for a one week time period.
20. Deceased employee worked fourteen weeks for Scoggins. If his total wages in the amount of $6,011.00 are divided by the number of weeks that deceased employee worked, his weekly wage would be $429.35 yielding a weekly compensation rate of $286.24 weekly wage. This weekly wage is consistent with the wages of Robert Hobbs who testified he earned $15.00 per hour and worked 20 to 30 hours per week. Mr. Scoggins' testimony that deceased employee was paid $12.00 per hour is accepted as credible. Since deceased employee's earnings are based upon the availability of work, the documentation provided by Mr. Scoggins of deceased employee's pre-injury earnings is also credible. There is no other wage documentation or evidence upon which to base an accurate average weekly wage and compensation rate.
21. Mr. John Woodin and Mrs. Barbara Woodin are the parents of deceased employee. Deceased employee was not married at the time of his death and had no children or dependents. A judgment of divorce was entered into evidence confirming that deceased employee was not married at the time of his death. Deceased employee's funeral expenses exceeded $3,500.00.
22. Based upon the greater weight of the competent and credible evidence, the Full Commission finds as fact that deceased employee was an employee of Myrick *Page 9 
on June 1, 2006 at the time of his compensable accident. There was an oral and implied contract of employment between deceased employee and Myrick. Deceased employee was performing work for Myrick on June 1, 2006 at the time of his compensable injury. Myrick had the right to control and did in fact control the nature, manner and details of the work performed by deceased employee on June 1, 2006.
23. The Full Commission finds as fact that at the time of his compensable injury on June 1, 2006, deceased employee was not performing work for Scoggins and was not performing work for Myrick as a lent employee of Scoggins as he had been "let go." After deceased employee accepted employment with Myrick, Scoggins did not have the right to control the details, nature and manner of the work he performed. Deceased employee was no longer an employee of Scoggins at the time of his compensable accident.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On June 1, 2006, deceased employee, Scott Woodin, sustained an injury by accident arising out of and in the course of his employment with Myrick. This compensable injury resulted in his death on June 7, 2006. N.C. Gen. Stat. §§ 97-2(6); 97-38.
2. At the time of the injury by accident, deceased employee was an employee of Myrick. N.C. Gen. Stat. § 97-2(2). The joint and lent employee doctrines do not apply in this case. Collins v. Edwards,21 N.C. App. 455, 204 S.E.2d 873, cert. denied, 285 N.C. 589,206 S.E.2d 862 (1974); Anderson v. Texas Gulf, Inc., 83 N.C. App. 634,351 S.E.2d 109 (1986); Henderson v. Manpower, 70 N.C. App. 408,319 S.E.2d 690 (1984).
3. The first two methods of calculating deceased employee's average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5) are unavailable in this matter as deceased employee was *Page 10 
only employed for approximately fourteen weeks prior to his compensable injury by accident and only for one day for Myrick at the time of his accident. As deceased employee had only been working for Myrick for one day at the time of his injury, method three is also unavailable for the calculation of deceased employee's average weekly wage. As there is no evidence of the wages of a similarly situated employee, method four is unavailable to calculate deceased employee's average weekly wage. Since the use of the above four methods is either unavailable and/or would be unfair to either the employee or employer, using the fifth method of computing deceased employee's average weekly wage would most nearly approximate the amount of compensation he would be earning were it not for his compensable injury. As deceased employee had worked for Myrick before and apparently was paid for that work at the same rate he was paid for his work at Scoggins, the Full Commission concludes that plaintiff was earning the same rate in his employment with Myrick as he earned in his employment with Scoggins. Therefore, deceased employee earned an average weekly wage of $429.35, yielding a compensation rate of $286.24.
4. There were no persons wholly or partially dependent upon deceased employee at the time of his death. John Woodin and Barbara Woodin are deceased employee's parents and next of kin as defined by the applicable statute and are entitled to receive from Myrick and Builders Mutual 400 weeks of compensation at the rate of $286.24 per week pursuant to N.C. Gen. Stat. §§ 97-38 and 97-40.
5. John Woodin and Barbara Woodin are entitled to receive from Myrick and Builders Mutual $3,500.00 in burial expenses pursuant to N.C. Gen. Stat. § 97-38.
6. Myrick and Builders Mutual are obligated to pay all medical expenses incurred as a result of deceased employee's compensable injury and death. N.C. Gen. Stat. § 97-25.
 *********** *Page 11 
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: AWARD
1. Defendants, Myrick Construction Company and Builders Mutual Insurance Company, shall pay compensation for a period of 400 weeks at the rate of $286.24 to John Woodin and Barbara Woodin, the parents of deceased employee. The accrued compensation shall be paid in a lump sum, and the remainder of the 400 weeks shall be commuted to its present value and paid in a lump sum.
2. Defendants, Myrick Construction Company and Builders Mutual Insurance Company, shall pay all medical expenses incurred by deceased employee as a result of the compensable injury by accident.
3. An attorney's fee in the amount of 25% of the compensation awarded to plaintiffs in paragraph 1 above is approved for plaintiffs' counsel and shall be deducted by Myrick Construction Company and Builders Mutual from the award above and paid directly to plaintiffs' counsel.
4. Defendants, Myrick Construction Company and Builders Mutual Insurance Company, shall pay funeral costs of $3,500.00.
5. Defendants, Myrick Construction Company and Builders Mutual Insurance Company shall pay the costs of this proceeding.
This the __ day of February 2009.
S/___________________ BERNADINE S. BALLANCE *Page 12 
COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1