***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Rideout, with modifications, and enters the following Opinion and Award:
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the Deputy Commissioner, Plaintiff was a 22 year-old male who resided in Fayetteville, North Carolina. Plaintiff had completed elementary school in his home country of Honduras. Plaintiff has worked as a gas station cashier and a sales agent in Honduras and has worked construction in North Carolina.
2. Defendant Turner Construction Company ("Defendant Turner") is a construction management firm. Defendant Turner and Cape Fear Valley Health System entered into a contract on 7 April 2005 for the construction of a pavilion and parking deck at Cape Fear Valley Health System ("Cape Fear site"). Defendant Turner entered into an agreement on 11 August 2006 with a subcontractor, Defendant BJL Construction, Inc. ("Defendant BJL") to perform work and furnish labor for the Cape Fear site. Defendant BJL entered into an agreement with Defendant Lance Reid d/b/a Fame Cleaning Services ("Defendant Reid") on or about July 2006 *Page 3 
to provide and employ one skilled laborer, one unskilled laborer, and a hoist operator for the Cape Fear site.
3. Plaintiff learned of a position at the Cape Fear site from Silvino Romo ("Mr. Romo"), an hourly employee of Defendant Turner. Mr. Romo told Defendant Turner that he had a friend who could work at the Cape Fear site as a helper. Mr. Romo brought Plaintiff to the Cape Fear site and Plaintiff began to work as a helper. Plaintiff met Defendant Reid about one week after he started working at the site. Thereafter, Plaintiff only saw Defendant Reid on the worksite on pay day, which was every other week. Defendant Reid paid Plaintiff $10.00 per hour and his average weekly wage was $600.00 per week.
4. Plaintiff's job as a helper required him to work everyday with Defendant Turner employees. Plaintiff's job was to help Defendant Turner employees with their daily tasks. Plaintiff received his work instructions from Mr. Romo. Mr. Romo provided Plaintiff with his daily job tasks. Mr. Romo, an employee of Defendant Turner, "provided direction" to Plaintiff.
5. Defendant Reid did not spend time at the Cape Fear job site because Defendant Turner told him that he did not need to be on the site. Defendant Turner told him that its supervisors would manage Defendant Reid's employees. Defendant Reid described Defendant Turner supervisors as wanting to "micro-manage."
6. On 20 December 2007, Defendant Reid employed Plaintiff, Vanessa Periman and James Smith.
7. By Defendant Reid's own admission, on 20 December 2007 and at all relevant times, Defendant Reid did not have a workers' compensation insurance policy to cover his employees at the Cape Fear site. *Page 4 
8. After contracting with Defendant Reid to employ a skilled laborer, an unskilled laborer, and a hoist operator for the Cape Fear site in July 2006, Defendant BJL never obtained from Defendant Reid a certificate of insurance that included workers' compensation insurance coverage.
9. The greater weight of the evidence shows that the work being done by Plaintiff at the Cape Fear site was essentially that of Defendant Turner, who had a general contract with Cape Fear Valley Health System to manage the construction of the pavilion and parking deck.
10. The greater weight of the evidence shows that Defendant Turner, as the entity in charge of managing the construction project at the Cape Fear site, had the right to control the details of the work at the Cape Fear site and Defendant Turner exercised that control.
11. The greater weight of the evidence shows that Defendant Reid was a general employer of Plaintiff who loaned Plaintiff to Defendant Turner, thereby making Defendant Turner a special employer of Plaintiff.
12. The greater weight of the evidence shows that Plaintiff and Defendant Turner had an implied contract where Plaintiff accepted the work assignment from Defendant Turner and Plaintiff performed the work under the supervision, and at the direction, of Defendant Turner.
13. On 20 December 2007, Plaintiff was working on the second floor of the building on the Cape Fear site. He went down to the first floor to gather some tools and when he reached the first floor, he felt "like a pipe, a heavy pipe" hit him on the head and he lost consciousness. Plaintiff's next memory is of waking up in the hospital.
14. Cumberland County EMS arrived at the Cape Fear site. Plaintiff had been hit on the head by a 15 pound plastic roll that had been thrown from the fourth floor window. Plaintiff was unconscious when EMS arrived. *Page 5 
15. Plaintiff was having severe neck and back pain. Plaintiff was taken to the emergency department of Cape Fear Valley Health System, where he was diagnosed with a head injury and a neck injury. Plaintiff was given Morphine for bilateral shoulder pain. The hospital was unable to obtain a social history due to his condition. Plaintiff had mild disc bulging at multiple levels in the mid and lower cervical spine and evidence of cervical muscle spasm. Plaintiff was prescribed Percocet and Cyclobenzaprine and instructed to follow up with a workers' compensation doctor in 2-3 days. Defendant Reid, Mr. Romo, and Defendant Turner's safety manager, Gaylord Ballard, came to check on Plaintiff in the hospital.
16. Plaintiff returned to the emergency department on 21 January 2008 with neck pain, muscle spasms, and a headache. Plaintiff was prescribed Baclofen and Vicodin. Plaintiff was referred to David Kishbaugh, D.O., and advised to follow up with a rehabilitation doctor for chronic neck pain. Through a translator, the hospital "staff attempted to make a [follow up appointment] with Dr. Kishbaugh, but [the] office require[d] authorization from workers' comp. [Plaintiff did] not understand this. [He was] advised to give employer the work note, then to take hospital bill to employer when it arrives, so he can file for workers' comp."
17. Plaintiff gave the hospital instructions to Mr. Romo, who gave the note to Mr. Ballard. Plaintiff did not give the note to Defendant Reid because Mr. Reid was seldom at the job site.
18. Mr. Ballard sent Plaintiff to U.S. Healthworks on 23 January 2008. Plaintiff had constant daily headaches, nervousness and confusion, and was unsure if he was having memory problems. He also had left sided neck pain. Plaintiff had been working his regular job, but was unable to continue. Plaintiff was restricted in the range of motion of his neck. Plaintiff also had arm numbness and tingling, neck pain with motion and restricted motion. Plaintiff was *Page 6 
instructed to stop his medications from the emergency room and was provided prescriptions for Cyclobenzaprine and Naproxen. He was instructed, through an interpreter, to return to the clinic in 3 days. He was given lifting restrictions of no lifting more than 10 pounds and no reaching or overhead work.
19. When Plaintiff returned to U.S. Healthworks for follow-up treatment he learned that Defendant Reid had cancelled his visits for further treatment. The front desk told Plaintiff that if he wanted more treatment he would have to pay for it himself.
20. Plaintiff does not have health insurance and cannot afford the treatment that was recommended by U.S. Healthworks. Plaintiff has not been able to obtain further treatment.
21. Plaintiff continues to experience headaches and neck pain. Plaintiff's headaches are sudden and strong. He feels frequent stings that come unexpectedly. His neck hurts most when it is straight for a long time. He has the most pain when he strains himself and tries to lift or do anything that requires force. Plaintiff also has memory problems and thinks more slowly than before the accident.
22. When Plaintiff returned to the Cape Fear site he learned that someone else had been hired to take his place. Neither Defendant Turner nor Defendant Reid has ever offered Plaintiff a light duty position.
23. Four months prior to the hearing before the Deputy Commissioner, Plaintiff began to work with a friend installing siding on homes in Fayetteville. Plaintiff only worked for 2 days because of the ongoing headaches and neck pain.
24. All of the competent medical evidence shows that Plaintiff's ongoing headaches and neck pain are as a result of his 20 December 2007 work injury. *Page 7 
25. All of the competent medical evidence shows that Plaintiff requires further medical treatment as recommended by Cape Fear Valley Health System on 20 December 2007 and 21 January 2008 and by U.S. Healthworks on 23 January 2008.
26. After the date of his injury, Plaintiff attempted to return to his regular job, but was unable to perform the job duties because of his pain. Since 23 January 2008 Plaintiff has been restricted to 10 pound lifting restrictions and no reaching or overhead work.
27. Plaintiff has not been able to obtain medical treatment to lessen the period of his disability since his claim was denied, he lacks health insurance, and cannot afford to pay for further treatment out of pocket.
28. Plaintiff has sought alternative light duty employment. Plaintiff's job search was reasonable considering that: he was 22 years old at the time of the hearing before the Deputy Commission, had little work experience, had an elementary school education, lacked enough English-speaking ability that he testified through a translator, had ongoing restrictions that limited him from doing manual labor, and had ongoing medical problems resulting from his work injuries.
29. The greater weight of the evidence shows that Plaintiff is capable of some work but that attempts at finding employment would be futile because of preexisting conditions that include a lack of experience in the labor market, a low level of education, lack of English-speaking ability, work restrictions of no lifting more than 10 pounds and no reaching or overhead work, as well as ongoing and untreated headaches and neck pain.
30. Plaintiff's average weekly wage was $600.00 per week, yielding a weekly compensation rate of $400.00.
 *********** *Page 8 
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 20 December 2007 Defendant Reid regularly employed three or more employees in North Carolina and therefore subject to liability under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1).
2. On 20 December 2007 Plaintiff was employed by Defendant Reid within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2).
3. On 20 December 2007 Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant Reid. N.C. Gen. Stat. § 97-2(6).
4. "The test for determining the liability of special employers in loaned employee cases is stated as follows: When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract for hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has a right to control the details of the work. When all three of the conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." Brown v. Friday Services, Inc.,119 N.C. App. 753, 759, 460 S.E.2d 356, 360 (1995), citing,Collins v. James Paul Edwards, Inc.,21 N.C. App. 455, 459, 204 S.E.2d 873, 876, cert. denied,285 N.C. 589, 206 S.E.2d 862 (1974) (quoting 1A, Larson,Workmen's Compensation Law, § 48.00).
5. An implied contract exists between a temporary employee and a special employer where the temporary employee accepts an assignment from the special employer and performs the work at the direction and under the supervision of the special employer. Id. *Page 9 
6. On 20 December 2007 Plaintiff had an implied contract with Defendant Turner. Plaintiff essentially performed work for Defendant Turner. Defendant Turner had the right to control the details of Plaintiff's work. Defendant Reid and Defendant Turner are both liable for all work-related injuries Plaintiff sustained on 20 December 2007. Id.
7. Defendant BJL failed to comply with N.C. Gen. Stat. § 97-19 and is therefore liable to Plaintiff for all disability and medical compensation due as a result of his injury on 20 December 2007. N.C. Gen. Stat. § 97-19.
8. As a result of his injury on 20 December 2007 Plaintiff is entitled to temporary total disability compensation at the rate of $400.00 per week beginning on 23 January 2008 and continuing until he returns to work or until order of the Commission allowing suspension of said payments. See Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454, (1993). N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to payment of all past and future medical expenses incurred for treatment of his 20 December 2007 injury, including treatment provided by Cape Fear Valley Health System and U.S. Healthworks. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendant Reid, Defendant Turner Construction, Defendant Liberty Mutual, Defendant BJL, and Defendant The Hartford, shall pay Plaintiff temporary total disability compensation at the rate of $400.00 per week beginning on 23 January 2008 and continuing until *Page 10 
Plaintiff returns to work or until order of the Commission allowing suspension of said payments. This accrued amount shall be paid directly to Plaintiff in a lump sum.
2. Defendant Reid, Defendant Turner Construction, Defendant Liberty Mutual, Defendant BJL, and Defendant The Hartford, shall pay all past and future medical expenses incurred for treatment of his 20 December 2007 injury, including future evaluations and treatment by a physician selected by Plaintiff.
3. A reasonable attorney's fee of 25% of the compensation due Plaintiff in paragraph 1 is approved for Plaintiff's attorney and shall be paid as follows: 25% of the lump sum due Plaintiff in paragraph 1 shall be deducted from that amount and shall be paid directly to Plaintiff's attorney. Thereafter, every fourth payment due Plaintiff shall be paid directly to Plaintiff's counsel as an attorney's fee.
4. Pursuant to N.C. Gen. Stat. § 97-19, Plaintiff shall exhaust the parties in the following order: Plaintiff shall first exhaust Defendants Reid, Turner Construction, and Liberty Mutual. Second, Plaintiff shall exhaust Defendants BJL and The Hartford.
5. Defendants Reid, Turner Construction, Liberty Mutual, BJL and The Hartford, shall pay all costs.
6. Defendant Reid shall be deemed exhausted within the meaning of N.C. Gen. Stat. § 97-19 if he does not pay the Award herein, in full, within the time permitted by N.C. Gen. Stat. § 97-18(e) (twenty-five (25) days).
7. If Defendant Reid does not satisfy this Award within the time permitted by N.C. Gen. Stat. § 97-18(e), Plaintiff will have exhausted Defendant Reid within the meaning of N.C. Gen. Stat. § 97-19 and Plaintiff will be entitled to immediate payment of the entire Award from *Page 11 
Defendant Turner Construction, Defendant Liberty Mutual, Defendant BJL, and Defendant The Hartford.
This the 22nd day of March, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER